**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

**CIVIL ACTION NO: 4:03CV-040-M**

**TERESA L. GOINS**                                                                                    **PLAINTIFF**

**V.**

**INTERSTATE BLOOD BANK, INC.**                                                          **DEFENDANTS**
**AND BIO-BLOOD COMPONENTS, INC.**
**(FORMERLY PLASMA BIOLOGICAL**
**SERVICES, INC.)**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment by Defendants, Interstate Blood Bank, Inc. and Bio-Blood Components, Inc. [DN 26]. Fully briefed, this matter stands ripe for decision. For the reasons set forth below, the motion by the Defendants for summary judgment is **GRANTED.**

**I. STANDARD OF REVIEW**

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific

facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.[1]

## II. BACKGROUND

In this action, Teresa Goins (Goins), the Plaintiff, brings suit against her employer, Interstate Blood Bank, Inc. (IBBI).[2] Her various claims arise out of IBBI's decision to terminate her employment on October 22, 2001.

Around September of 1994, Plaintiff began working as a phlebotomist at the Owensboro, Kentucky plasma center, which was owned at that time by Alpha Therapeutics.

---

[1] The Plaintiff incorrectly argues that the Kentucky standard of summary judgment as set forth in Steelvest, Inc. v. Scansteel Serv. Ctr., Inc., 807 S.W.2d 476 (Ky. 1991) is appropriate in this action. When there is a motion for summary judgment in a diversity case, the provisions of Rule 56 control its determination. Gafford v. General Elec. Co., 997 F.2d 150, 166 (6th Cir. 1993).

[2] The other named Defendant, Bio-Blood Components, Inc., is a company within the incorporated entity of Defendant IBBI. The opinion will refer to the Defendants collectively as IBBI.

As a phlebotomist, Goins drew plasma from donors. IBBI took over the Owensboro facility from Alpha around January of 1998 and promoted Goins to Assistant Manager of the Owensboro facility shortly thereafter. The President of IBBI formally appointed Goins as manager of the Owensboro facility in May of 1999. In this capacity, she was in charge of between eight and thirteen employees.

This position highlighted Goins' difficulty in getting along with other employees at the facility. Not only did she yell at her subordinates, but she occasionally even argued with donors, including one instance in which she "flipped off" a donor who said something to her that she felt was rude. Plaintiff's job as manager was also stressful due to long hours and what she viewed as a less than helpful staff. On April 24, 2001, Plaintiff documented these problems in a letter asking that she be permitted to step down as manager of the Owensboro facility. IBBI granted this request, and Plaintiff returned to her position as a phlebotomist.

Although Goins had stepped down from management, her problems with her co-employees continued. The new manager, Talia NeSmith (NeSmith), also received complaints about Goins' behavior from her co-employees. Furthermore, Stephanie Greer, an Assistant Manager at the facility, testified that she had received over twenty calls from unidentified donors who complained about Goins' rude attitude with them.

On October 17, 2001, at the request of the late Jim Howell (Howell), the Regional Manager responsible from the Owensboro facility, NeSmith interviewed employees who told her of their problems with Goins. The employees documented many of the aforementioned problems. Consequently, NeSmith decided to lay off Goins on October 22, 2001, and she

was formally terminated shortly thereafter as "[h]er behavior towards management and relationships with other co-workers has created an unproductive work environment." NeSmith's unrebutted testimony indicates that at the time she terminated Goins she was unaware of any of Goins' allegations that she had been asked to take unacceptable donors. Furthermore, although Goins claims to have mailed a written complaint to the FDA about alleged violations at the facility, she admits that no one in the company was aware that she had written the letter.

Goins disputes her employer's proffered reason for her termination and paints a somewhat different picture of her work environment. Although Goins admits to having minor difficulties with her co-workers, she asserts that their relationship, on the whole, was a positive one. Moreover, Heather McDowell, one of Goins co-workers, testified that most of the employees of the Owensboro facility had at some point "flipped off" a donor. Goins claims that her problems at the facility were mainly a result of instructions by Howell to maintain a high number of donors and that marginal compliance of FDA regulations equated to compliance. According to Goins, this instruction sometimes placed her at odds with FDA regulations and the company standard operating procedure (SOP). Goins claims that she was terminated because she reported to management violations of IBBI's SOP as well as violations of federal regulations that govern the management of plasma. Goins also contends that she was terminated because she refused to make untrue entries in the documentation that the facility was required to keep. Moreover, Goins feels as though she was a target for termination due to a letter she sent IBBI President Larry Moss on October 11, 2001. In the

letter, Goins complained about her inadequate training as a manager, staff shortages, stress, the rehiring of Candace Reed, an employee with whom Goins was at odds, and pressure "to take donors I shouldn't." Goins also accuses NeSmith of altering her initials to resemble those of Goins so as to create confusion as to who had signed off on certain documents.

In light of her termination, Plaintiff brings suit against IBBI alleging in her Complaint a common law claim of wrongful discharge. She bases this claim on her refusal to violate federal regulations. Alternatively, Plaintiff asserts for the first time in her response to Defendants' motion for summary judgment a wrongful discharge claim in which she claims she was terminated for a refusal to violate KRS 517.050, which pertains to the falsification of business records. She also asserts in her Complaint that IBBI did not compensate her for overtime to which she was entitled under the Wage and Hour laws as codified in KRS 337.

### III. DISCUSSION

In its motion for summary judgment, IBBI argues that, as Goins was an employee at will, it could terminate her without cause. While IBBI acknowledges that Kentucky law has crafted a narrow exception to the employment at will doctrine, it contends that Goins alleges no facts which would enable her to qualify for any such exception. As to Plaintiff's claim under KRS 337, IBBI argues that since Plaintiff was an exempt employee who failed to exhaust her administrative remedies, she cannot state a claim for overtime pay under that statute. As such, IBBI argues that summary judgment is appropriate in this case.

### A. Employee At Will

"Ordinarily an employer may discharge his at-will employee for good cause, for no

cause, or for a cause that some might view as morally indefensible." <u>Firestone Textile Co. Div. v. Meadows, Ky.</u>, 666 S.W.2d 730, 731 (1984). Here, IBBI claims to have discharged Goins because "her behavior towards management and relationships with other co-workers has created an unproductive work environment."

Plaintiff argues in her brief that she behaved no differently than the other employees of the Owensboro facility. Even if true, it would not be legally relevant given Plaintiff's employee at will status. Rather, Plaintiff's claim for wrongful discharge can only succeed if she can show that the general rule of employment at will is not applicable. She attempts to do so by asserting wrongful discharge claims based on federal regulations and KRS 517.050 respectively.

### B. Wrongful Discharge–Federal Regulations

In order to prove wrongful discharge, a plaintiff must show that she was discharged either because she (1) failed or refused to violate a law in the course of employment, or (2) exercised a right conferred by a well-established judicial enactment. <u>Grzyb v. Evans</u>, 700 S.W.2d 399, 402 (Ky. 1985). Furthermore, the tort of wrongful discharge is only applicable if (1) the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law or (2) the policy is evidenced by a constitutional or statutory provision. <u>Id</u>. at 401. "The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." <u>Id</u>. at 401. The burden is on the Plaintiff to prove all of these elements. <u>Willoughby v. Gencorp, Inc.</u> 809 S.W.2d 858, 861 (Ky. Ct. App. 1990).

In this case, Plaintiff's claim is based on her refusal to violate FDA regulations in the course of employment. As such, the question becomes whether federal regulations can form the basis for public policy in the state of Kentucky. In diversity cases, federal courts must apply state law in accordance with the decisions of the state's highest court. Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 517 (6th Cir. 2003). Neither the parties nor the Court has located any cases in which the Kentucky Supreme Court directly answers the question at issue. When evaluating an undecided question of Kentucky law, a federal court sitting in diversity must make the best prediction, even lacking direct precedent, of what the Kentucky Supreme Court would do if it were confronted with the question. Combs v. Int'l Ins. Co., 354 F.3d 568, 577 (6th Cir. 2004). When choosing between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability, courts should choose the narrower and more reasonable path. Id. The Sixth Circuit in Combs also stated,

> [F]ederal courts sitting in a diversity case are in "a particularly poor position ...to endorse [a] fundamental policy innovation . . . . Absent some authoritative signal from the legislature of the courts of [the state], we see no basis for even considering the pros and cons of innovative theories . . . ." Dayton v. Peck, Stow & Wilcox Co., 739 F.2d 690, 694 (1st Cir. 1984). Federal courts hearing diversity matters should be extremely cautious about adopting "substantive innovation" in state law. Rhynes v. Branick Mfg. Corp., 629 F.2d 409, 410 (5th Cir. Unit A 1980).

Without direct Kentucky Supreme Court precedent, the Court looks to persuasive authority from lower courts in Kentucky, as well as courts in other jurisdictions. In Shrout v. TFE Group, 161 S.W.3d 351, No. 2004-CA-000834-MR, 2005 Ky. App. LEXIS 90, at *8 (Ky Ct. App. Apr. 1, 2005) the court held that because federal regulations are neither

Kentucky statutes nor constitutional provisions, they cannot be a basis for wrongful discharge claims. see also Burgess v. Paducah Transit Auth., No. 5:03CV-166-R, 2005 U.S. Dist. LEXIS 9722, at *29 (W.D. Ky. May 23, 2005).

In a case remarkably similar to the instant case, the Fourth Circuit in Szaller v. Am. Nat'l Red Cross, 293 F.3d 148 (4th Cir. 2002) held that an employee of the Red Cross who reported deficiencies which he believed violated FDA regulations could not make out a wrongful discharge claim on public policy grounds. The court stated,

> It would be an astonishing step for a federal court to impose in the first instance the entire Code of Federal Regulations on every Maryland employer. There are thousands and thousands of pages in the fifty titles of the C.F.R. If a federal court were to announce that these were all sources of Maryland public policy, an employee could immunize himself against adverse employment action simply by reporting an alleged violation of any regulation. And the narrow wrongful discharge exception, carefully carved out by the Maryland courts, would then supplant the general at-will employment rule. Such a ruling would turn federalism on its head.

Id. at 152.

Similarly, in Oklahoma, a plaintiff pursuing a wrongful discharge claim must identify an Oklahoma public policy goal that is clear and compelling and is articulated in existing Oklahoma constitutional, statutory, or jurisprudential law. Clinton v. State ex rel. Logan County Election Bd., 29 P.3d 543, 546 (Okla. 2001).

In light of this authority, the Court concludes that federal regulations cannot form the basis of a wrongful discharge claim in violation of public policy in Kentucky. Gryzb and its progeny repeatedly emphasize the need for a "fundamental and well-defined" public policy. Those terms would lose their meaning if the Court were to permit the voluminous C.F.R. to

shape state public policy. Furthermore, the Sixth Circuit's instructions on deciding unresolved questions of state law, as well as the decisions of the Kentucky Court of Appeals and other state and federal courts, all support our conclusion. As Plaintiff cannot even meet this threshold, the Court need not consider Defendants' alternative arguments.

### C. Wrongful Discharge–KRS 517.050

Goins, perhaps recognizing that FDA regulations do not provide a sufficient public policy basis on which to assert a wrongful discharge claim, argues in her response to Defendants' motion to summary judgment that KRS 517.050 provides a statutory basis for her wrongful discharge claims.[3] In support of the claim, Goins asserts that Howell instructed her "not to look behind the addresses" of potential donors, to alter records, and to make untrue entries in required documentation. Refusal to falsify a business record in violation of KRS 517.050 may give rise to a wrongful discharge claim. Northeast Health Mgmt., Inc. v. Cotton, 56 S.W.3d 440, 447 (Ky. Ct. App. 2001).

While evidence that an employee's refusal to falsify a business record in violation of KRS 517.050 may give rise to a triable issue in some cases, the relevant issue here is whether the issue was properly raised. "A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." Tucker v. Union of Needletrades, Indus., & Textile Employees et al.., 407 F.3d 784, 788 (6th Cir. 2005). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new

---

[3]KRS § 517.050 states in pertinent part that "A person is guilty of falsifying business records when, with intent to defraud, he: (a) [m]akes or causes a false entry to be made in the business records of an enterprise; or (b) [a]lters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise."

-9-

claim is to amend the complaint in accordance with Rule 15(a)." Id. Here, the Plaintiff does not exactly attempt to raise a new claim in her response to Defendants' motion for summary judgment, but rather she attempts to allege a new basis for her wrongful discharge claim. Courts have held, though, that a plaintiff's claim wrongful discharge claim fails when she has not identified the specific public policy that the employer allegedly violated. See Markham v. Computone, Inc., No. 91-6433, 1992 U.S. Dist. LEXIS 3570, at*25 (E.D. Pa. Mar. 18, 1992); Considine v. Compass Group U.S.A., Inc., 551 S.E.2d 179, 184 (N.C. App. 2001); White v. Thornton Oil Corp., 2002 Conn. Super. LEXIS 2285, at *3 (Conn. Super. Ct. Jul. 12, 2002). The Plaintiff's Complaint identified federal regulations as a public policy, but the Court has already determined that such regulations are insufficient to provide the basis for a wrongful discharge claim. Thus, the Plaintiff's Complaint as it currently reads sets forth no public policy basis to support a wrongful discharge claim.

Even if the Court were to assume the Plaintiff's Complaint to be sufficient despite its failure to allege KRS § 517.050 as the public policy violated by the Defendants, her claim still fails. Here, again, Plaintiff's case is similar to that of the plaintiff in Szaller. In that case, the court noted that "the employee must allege that his employer asked him to do something unlawful and discharged him for refusing, not merely that there was an unspoken expectation of silence regarding the employer's purported contravention of a law." Szaller, 293 F.3d at 152. Similarly, the court in Mandsager v. Jaquith, 706 A.2d 39, 42 (D.C. App. 1998) noted that a wrongful discharge claimant attempting to show an exception to employment at-will must show "an outright refusal to violate a specific law, with the

employer putting the employee to the choice of breaking the law or losing [her] job...It is not enough to show that the employee might infer from the employer's conduct that she was being asked to do something that was possibly illegal."

Goins does not assert that Howell told her to do something illegal. Rather, she testified that Howell never told her not to follow the SOP. Even in her Complaint, the Plaintiff stated that she "was instructed by her Supervisor, Jim Howell, to keep the donor numbers up and marginal compliance was compliance." While it is possible that Plaintiff could infer from Howell's conduct that she was being asked to do something that was possibly illegal, there is no dispute that Howell never specifically asked Plaintiff to do anything unlawful.

Plaintiff also makes the allegation that during a power outage at IBBI's Owensboro facility, Howell had her place dry ice in the freezer to preserve the stored plasma and that he required her to place dry ice around the thermometer to maintain the recorded temperature. The Plaintiff did not refuse to carry out the instruction; thus, this evidence does not support her claim.

Lastly, most of the incidents complained of occurred while Plaintiff was manager. Despite her allegations of retaliation, she continued to work for six months after she voluntarily stepped down as manager and returned to her position as a phlebotomist. The Plaintiff has failed to put forth any evidence of retaliation. The Court finds that no reasonable jury could conclude that she was terminated because she refused her employer's instructions to violate the law.

**D. KRS 337**

Finally, Plaintiff's wage and hour claim based on KRS 337 can be easily dispatched. The parties dispute whether IBBI had a "company policy" which would entitled one in Goins' position to overtime pay. There is no dispute, however, that Goins failed to file a wage and hour charge with the appropriate state agency before seeking relief in federal court. Thus, Plaintiff's wage and hour claim fails as a matter of law. See McMichael v. Falls City Towing Co., 199 F.Supp.2d 632, 637 (W.D. Ky. 2002) (concluding after reviewing amendments to Kentucky statues and case law that an employee must assert any statutory wage and hour disputes with the Secretary of Labor Cabinet before filing suit in any court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [DN 26] is **GRANTED.**

03cv-040Goins
cc: counsel of record